UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUSTY RENDON, an individual, and JOHN
PANARESE, an individual,

                              Plaintiffs,

   -against-                                    No. 22 Civ 10420 (CM)

BERRY GLOBAL INC.,

                              Defendant.

---

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

McMahon, J.:

Plaintiffs Rusty Rendon and John Panarese ("Plaintiffs") are legally blind persons who bring this action against Defendant, Berry Global, Inc. ("Defendant") alleging that Defendant failed to make its website fully accessible to blind and visually-impaired individuals in violation of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL").

Defendant has filed a motion to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

For the following reasons, Defendant's motion to dismiss is GRANTED.

1

## BACKGROUND

### I.   Parties

Plaintiff Rusty Rendon is a resident of the State of California. He is a blind, visually-

impaired, handicapped person and a member of a protected class of individuals under the ADA.

Complaint ("Compl.") ¶ 14.

Plaintiff John Panarese is a resident of Hauppauge, New York. He is a blind, visually-

impaired, handicapped person and a member of a protected class of individuals under the ADA

and NYSHRL. *Id*. ¶ 15.

Defendant is a corporation organized and existing under the laws of the State of Delaware

with its principal place of business located in Evansville, Indiana. *Id*. ¶ 17. Defendant owns and

operates a website that offers information about its plastics products and provides investment

information. *Id*. ¶ 23. Defendant is a business-to-business company that does not sell any

products to the general public; no transactions can occur on its website.[1] It is a public company;

its shares are traded on the New York Stock Exchange.

### II.   Factual Background

Plaintiff Rendon alleges that he uses screen-reading technology to access websites on the

Internet. Compl. ¶ 25. Unless websites are designed to be read by screen-reading software, blind

and visually-impaired persons are unable to fully access websites, and the information, products,

goods and services contained thereon. *Id*. ¶ 20. Rendon alleges that, during his visits to

Defendant's website – the last of which occurred in August 2022 – he encountered "multiple

access barriers that denied his full and equal access to the information, goods and/or services

---

[1] In determining a motion to dismiss, apart from the complaint itself, the court may consider any documents attached to it as exhibits or incorporated into the complaint by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Here, the complaint specifically references Defendant's website "ir.berryglobal.com." Compl. ¶ 4.

offered to (and made available for) the general public." *Id*. ¶ 25. Specifically, Rendon alleges

that the website had the following accessibility issues, "among other things:" (i) the headings

were not in numerical order; and (ii) there were many mislabeled images. *Id.* ¶ 26. Rendon

alleges that he was "highly interested in investing in Defendant and learning [sic] regarding the

products offered by Defendant." *Id.* ¶ 27. He further alleges that he "intends to return to the

website to transact business there as soon as the accessibility barriers are cured." *Id.*

Plaintiff Panarese (a resident of the Eastern District of New York) alleges that he also

uses screen-reading technology to access websites on the Internet. Compl. ¶ 28. He alleges that,

during his visits to Defendant's website – the last of which occurred in October 2022 – he too

encountered "multiple access barriers." *Id*. Specifically, Panarese alleges that the website had the

following accessibility issues, "among other things:" (i) it was not possible to read investment

charts with the screen reader; (ii) mislabeled headings and tags on the main page and subsequent

pages; (iii) it was not possible to read, with the screen reader, "information" pages throughout

the website. *Id.* ¶ 29. Panarese also alleges that he was "highly interested in investing in

Defendant and learning regarding the products offered by Defendant." *Id.* ¶ 30. He further

alleges that he "intends to return to the website to transact business there as soon as the

accessibility barriers are cured." *Id.*

Both Rendon and Panarese are "testers," individuals who "monitor[] whether places of

public accommodation and their websites comply with the ADA." *Harty v. W. Point Realty, Inc.*,

28 F.4th 435, 443 (2d Cir. 2022); Compl. at ¶ 16. Plaintiffs have filed multiple lawsuits against

various operators of commercial websites under California's Unruh Civil Rights Act ("Unruh

Act"), Cal. Civ. Code § 51 et seq. on behalf of visually-impaired persons. Compl. at ¶ 16.

### III.    Procedural Posture

Plaintiffs initiated this action by filing their Complaint on December 12, 2022. *See* Dkt.

No. 2. The Complaint asserts claims for violations of the ADA (Count I) and the NYSHRL

(Count II) based on disability discrimination. Count III seeks declaratory relief with respect to

the ADA and NYSHRL violations alleged in Counts I and II.

Plaintiff seeks a preliminary and permanent injunction requiring Defendant to make its

website fully compliant with the requirements set forth in the ADA and NYSHRL. Plaintiff also

seeks declaratory relief, compensatory damages, civil penalties and fines, punitive damages, and

attorneys' fees and costs. Compl. Prayer for Relief, ¶ 56.

Defendant moved to dismiss the FAC pursuant to 12(b)(1) on January 31, 2023. Dkt. No.

10. The sole ground assigned is lack of subject matter jurisdiction.[2]

**LEGAL STANDARD**

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it." *Arar v. Ashcroft*, 532

F.3d 157, 168 (2d Cir. 2008) (internal citations and quotation marks omitted). To survive a

motion to dismiss pursuant to Rule 12(b)(1), Plaintiffs must carry their burden to prove that it

exists. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Unlike other factual

allegations, "jurisdiction must be shown affirmatively, and that showing is not made by drawing

---

[2] Defendant did not move to dismiss under Rule 12(b)(2) on the ground that the court lacks personal jurisdiction over it; in view of the fact that the defendant's website is purely passive and does not allow for either the exchange of information or for transactions to take place, it may well be that New York lacks personal jurisdiction over this Delaware/Indiana corporation. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007); *Diaz v. Kroger Co.*, 2019 WL 2357531, at *7 (S.D.N.Y. June 4, 2019). Similarly, Defendant did not move under 12(b)(3) to dismiss for improper venue; no party is located in the Southern District of New York, so it is hard to see why venue should lie in this district. *See* 28 U.S.C. § 1391. However, both lack of personal jurisdiction and improper venue are waivable defenses and have been waived as to the instant complaint by filing a motion that omits to assert them. Fed. R. Civ. P. 12(h)(1)(A).

from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

"The irreducible constitutional minimum" necessary to establish subject matter jurisdiction is standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). A plaintiff must satisfy three requirements to establish standing under Article III:

First, "plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."

Second, a plaintiff must show a "causal connection between the injury and the conduct complained of."

Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

## DISCUSSION

Defendant argues that Plaintiffs do not have standing to bring their claims, because they have failed to allege either an injury-in-fact or a likelihood of future harm. *See* Dkt. No. 11 at 1.

In the ADA context, the so-called *Kreisler* factors are used to determine whether standing exists: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [defendant's business] to plaintiff's home, that plaintiff intended to return to the subject location. *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013). In the context of websites, "the third requirement can be met by non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available

on the particular website, that the plaintiff intends to return to the website." *Loadholt v. Dungarees, Inc.*, No. 22-CV-4699 (VEC), 2023 WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023) (citing *Harty*, 28 F.4th at 443).

Defendant asserts that Plaintiffs' allegations of injury-in-fact and intention to return to Defendant's website are simply legal conclusions and are devoid of any plausible factual allegations sufficient to confer standing. Dkt. No. 11 at 10. Defendant points out particularly that, as it does not offer products or services to the public on its website, it is not reasonable to infer that either Plaintiff will return to the website in order to engage in some business transaction.

The Second Circuit's recent decision in *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) "raised the bar appreciably for adequately pleading standing to seek injunctive relief in ADA cases." *Hennessy by & through Hennessy v. Poetica Coffee Inc.*, 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) (collecting cases).[3]

In *Calcano*, the Second Circuit held that, "Plaintiffs' conclusory invocations of the factors we found relevant in *Kreisler* are insufficient to establish standing." 36 F.4th at 75. In that case, four visually impaired plaintiffs alleged that various retailers violated the ADA by failing to offer gift cards containing braille. *Id.* at 72. The court held that the plaintiffs' identical and conclusory allegations that each of them resided "in close proximity to Defendants' businesses, has been a customer at Defendant's [location] on prior occasions, and intends to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind" simply parroted the court's language in

---

[3] "A private individual may only obtain injunctive relief for violations of a right granted under Title III [of the ADA]; he cannot recover damages." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir. 2004). The damages asserted by Plaintiffs must relate to their NYSHRL claim.

*Kreisler* and were "merely legal conclusions couched as . . . factual allegations." *Calcano*, 36

F.4th at 76 (internal quotations omitted). The court found that the plaintiffs' "vague assertions

that they have been customers at Defendants' businesses on prior occasions," did not "nudge

their claims "across the line from conceivable to plausible." *Id.* Moreover, three of the plaintiffs

did not provide "*any* details about their past visits or the frequency of such visits;" they did not

"specify which stores they visited or what items they purchased;" and they did not "say why they

want to purchase braille gift cards . . . so urgently." *Id.* at 76-77. The court concluded that,

"Without such basic information, Plaintiffs cannot possibly show that they have suffered an

injury that is 'concrete and particularized.'" *Id.* at 77.

As was the case in *Calcano*, the factual allegations in the Complaint before the court are

insufficient to confer standing. Both Plaintiffs assert identical allegations in the Complaint: that

they "browsed and attempted to transact business on Defendant's website, ir.berryglobal.com,

and encountered barriers," (Compl. ¶¶ 4, 5), they visited the website to "investigate potential

investment in Defendant's business and learn more regarding its plastics products, goods, and/or

services," (*Id.*) and that they were "highly interested in investing in Defendant and learning

regarding the products offered by Defendant" and "remain[] hopeful that the accessibility

barriers will be cured expeditiously, as Plaintiff[s] intend[] to return to the website to transact

business there as soon as the accessibility barriers are cured." *Id.* ¶¶ 27, 30.

Their allegations do not include any detail about Plaintiffs' past visits to Defendant's

website or the frequency of such visits, specify what in particular they were hoping to learn by

visiting Defendant's website, explain how the accessibility barriers prevented them from

accomplishing their goals on the website, explain why Panarese or Rendon became interested in

potentially "investing" in Defendant in the first place (I assume this means purchasing stock in

the company on a public exchange, although that is not specified – one cannot purchase stock in

the Defendant on its website). Nor does the Complaint explain why Plaintiffs wish to return to

the website as soon as the barriers are lifted, or specify when they plan to return to Defendant's

website. Therefore, Plaintiffs here – as in *Calcano* – have also not provided the basic information

needed to demonstrate that they suffered a "concrete and particularized" injury.

Defendant next argues that Plaintiffs' allegations that they "intend to return to the website

to transact business" (Compl. ¶ 6) and "intend to purchase certain goods and/or services from

Defendant's website" (*Id.* ¶¶ 27, 30) are implausible because it is a business-to-business

company that does not sell any products to the general public or conduct transactions on its

website. As a result, Defendant argues that the only injury Plaintiffs can claim to have suffered is

an "informational injury" from failing to receive information about Defendant's products and

investment information about the company. *See, e.g.*, Compl. ¶ 37.

In *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 n.3 (2d Cir. 2022), the plaintiff

argued that he suffered an "informational injury" because he was "deprived [] of the information

required to make meaningful choices for travel." The Second Circuit held that this allegation was

not sufficient to confer standing, because the plaintiff had not alleged any "downstream

consequences" from this informational failure. The Court of Appeals held, "Even assuming that

[plaintiff] can allege that he was deprived of information to which he is entitled by the ADA, he

must also allege downstream consequences from failing to receive the required information" and

that "he has an interest in using the information beyond bringing [his] lawsuit." *Id.* at 444

(internal citations and quotations omitted.)

In this case, Plaintiffs' cannot plausibly allege that they suffered any informational injury

about the products and services that Defendant offers to the public, because Defendant does not

offer products or services to individuals like Plaintiffs. So, Plaintiffs state in their opposition

brief that they alleged downstream consequences in their Complaint due to, "Plaintiffs' inability

to obtain relevant information from Defendant's website . . . necessary for them to evaluate

whether to purchase Defendant's publicly-traded stock, which is listed on the New York Stock

Exchange." Dkt. No. 14 at 8-9. However, this allegation does not appear anywhere in the

Complaint. Even if it did, such a conclusory statement without more factual detail – such as, for

example, explaining what information Plaintiffs were unable to access; how this impacted their

decision whether or not to buy stock in the Defendant; and what downstream injury they suffered

by not purchasing that stock (*i.e.*, Plaintiffs do not allege that they planned to buy the stock on a

particular date or sell the stock on a date when they would have made money) – is insufficient to

show that Plaintiffs suffered an injury that is 'concrete and particularized" or that they would

suffer "a real and immediate threat of future injury." *Calcano,* 36 F.4th at 75.

Plaintiffs also argue in their opposition brief that they suffered a "dignitary injury." Dkt.

No. 14 at 6. They cite to a Fourth Circuit case *Griffin v. Department of Labor Federal Credit

Union*, 912 F.3d 649 (4th Cir. 2019) for the proposition that "dignitary harms are readily inferred

by allegations of unequal treatment," and that, "Congress, in enacting the ADA, intended in part

to protect people with disabilities against stigmatic injury." 912 F.3d at 654. However, in this

out-of-circuit case, the court explicitly stated that, "Inability to obtain information is sufficiently

concrete to constitute injury in fact only when the information has some relevance to the

litigant." 912 F.3d at 654. But, as noted, Plaintiffs did not allege in their Complaint how they

suffered a concrete injury through lack of access to the information on Defendant's website and

so did not explain how the information has any relevance to them. Information in a brief does not

amend the complaint.

In their opposition brief to the motion for summary judgment, Plaintiffs make much of the fact that they are "testers," arguing that their status as testers "does not deprive them of constitutional standing to sue." Dkt. No. 14 at 19. They argue that "*Calcano* did not purport to involve purported testers" and that "the fact that Plaintiffs are testers actually increases the likelihood that they will return to the Website to evaluate its accessibility after it is remediated by Defendant." *Id.* at 15. Plaintiff cites to an Eleventh Circuit decision in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1340 (11th Cir. 2013) for the proposition that tester status "weigh[s] in favor of the likelihood of return to the location of the ADA violation for another test." Dkt. No. 14 at 21.

However, contrary to Plaintiffs' assertions, the Eleventh Circuit in *Houston* did not merely rely on plaintiff's status as a tester to find that he had an intention to return. The court determined that the plaintiff's complaint sufficiently alleged facts to support a likelihood of return to Defendant's supermarket, not only because, "ADA testing appears to be [plaintiff's] avocation," but also because plaintiff alleged that the supermarket was close to where the plaintiff resided, plaintiff drove by the store on a regular basis as it was on his travel route and plaintiff entered the supermarket on two prior specified occasions to shop. *Houston*, 733 F.3d at 1340.

The Second Circuit in *Harty* specifically stated that a "conclusory assertion" that a plaintiff has "'tester' standing . . . is not enough to overcome the deficiencies of [a plaintiff's] complaint. The law is clear that testers can have standing, but even testers have to show that they have suffered an Article III injury in fact." *See also Laufer v. Ganesha Hosp. LLC*, No. 21-995, 2022 WL 2444747, at *2 (2d Cir. July 5, 2022). The court noted that "the Supreme Court clarified that a plaintiff has standing to bring a claim for monetary damages following a statutory

violation only when he can show a current or past harm beyond the statutory violation itself."
*Harty*, 28 F.4th at 443 (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204-07, 210
L.Ed.2d 568 (2021)). The plaintiff in *Harty* was himself a "tester" who "monitors whether places
of public accommodation and their websites comply with the ADA." *Id.* at 440. The court held
that the plaintiff's allegations that "in the near future he intend[ed] to revisit [the defendant's]
website to test it for compliance with [the ADA] and possibly to use the website to reserve a
guest room" were "not sufficiently imminent to create an injury in fact." *Id.* at 443. It noted that
"Such 'some day' intentions – without any description of concrete plans, or indeed even any
specification of when the some day will be – do not support a finding of the 'actual or imminent'
injury that Article III requires." *Id.*

     Likewise here, Plaintiffs merely allege that they are "testers" and that that they "still
intend to purchase certain goods and/or services from Defendant's website in the future," (*Id.*
¶ 6), and "intend[] to return to the website to transact business." *Id.* ¶¶ 27, 30. These are exactly
the sort of "some day" intentions without more factual specificity that *Harty* held do not
demonstrate an actual or imminent injury. And, unlike the tester in *Harty*, these Plaintiffs cannot
plausibly allege that they wish to return to Defendant's website to conduct some business
transaction.

     Finally, Defendant asserts that Plaintiffs' inaccurate allegations about transacting and
purchasing products on Defendant's website stem from the fact that Plaintiffs have filed "a
myriad of copy-and-paste ADA website lawsuits." Dkt. No. 11 at 1-2; Dkt. No. 12-3. Defendant
asserts that the complaints in these form lawsuits are virtually identical, with only minimal
modifications to reflect the particular website at issue and the products or services offered by the
various defendants. Dkt. No. 11 at 2.

In *Calcano*, the Second Circuit noted that the "backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury." 36 F.4th at 77. It noted that "judicial experience and common sense suggest that the errors, oddities, and omissions in the complaints are a result of their mass production, and they render each Plaintiff's cookie-cutter assertion of standing implausible." *Id.* (internal quotations omitted). Indeed, since 2019, Plaintiffs in this case have filed over three hundred ADA actions across the country, Plaintiff Rendon has filed over a dozen in New York and Plaintiff Panarese has filed over forty in New York.[4] The complaints in these actions contain the same "cut-and-paste and fill-in-the-blank" allegations that existed in *Calcano*, which only serves to underscore the implausibility of Plaintiffs' claims. 36 F.4th at 77.

In sum, Plaintiffs have not alleged facts sufficient to establish Article III standing for their ADA claim. Those claims are therefore dismissed, but without prejudice. If Plaintiffs can figure out a way to assert a concrete and particularized injury, they are welcome to try; however I would suggest that they think about where to bring suit, as well as whether to bring suit.

The Court declines to exercise supplemental jurisdiction over Plaintiffs' NYSHRL claim. *See* 28 U.S.C. § 1367(c)(1); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *Harty v. Koutsourades*, No. 20-CV-2779 (PMH), 2021 WL 1299495, at *7 (S.D.N.Y. Apr. 7, 2021).

---

[4] *See e.g.*, *Rendon et al v. Complex Media, Inc.*, 22-cv-10426 (filed 12/09/2022); *Rendon et al. v. Extreme Networks, Inc.*, 22-cv-10428 (filed 12/09/2022); *Rendon et al v. Milla and Ella Co., LLC*, 22-cv-10430 (filed 12/09/2022); *Rendon et al v. Ramy Brook, LLC*, 22-cv-10437 (filed 12/09/2022); *Thruston et al v. Bric's USA, Inc.*, 22-cv-10424 (filed 12/09/2022); *Licea et al. v. Consensus Cloud Solutions, Inc. et al.,* 22-cv-10427 (filed 12/09/2022); *Licea et al. v. NEO4J, Inc.*, 22-cv-10434 (filed 12.09/2022); *Mejico et al. v. Pepper Palace Inc.*, 22-cv-10436 (filed 12/09/2022); *Martin et al. v. Second Story Promotions, Inc.*, 22-cv-10438 (filed 12/09/2022). For a full list of cases *see* Dkt. No. 12-3. On a motion to dismiss, a Court may take judicial notice of court filings and other matters of public record. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201(c)(2).

## CONCLUSION

For the reasons discussed above, the motion to dismiss for lack of subject matter

jurisdiction is GRANTED, without prejudice.

This constitutes the decision and order of the court. It is a written opinion. The Clerk of

Court is respectfully directed to terminate the motion at Docket Number 15 and to close this

case.

Dated: May 30, 2023
      New York, New York


                                    U.S.D.J.


BY ECF TO ALL COUNSEL